UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


KATIE M. SELKOW,

        Plaintiff,

                                Case No. 8:11-cv-456-T-33EAJ
v.

7-ELEVEN, INC.,

        Defendant.
_____/

## ORDER

This matter comes before the Court pursuant to Defendant 7-Eleven, Inc.'s Motion for Summary Judgment (Doc. # 24), filed on February 28, 2012. Plaintiff filed a response in opposition to the motion on March 26, 2012 (Doc. # 31). Also before the Court is Plaintiff Katie M. Selkow's Dispositive Motion for Summary Judgment Establishing Certain Facts and Issues as Not Genuinely at Issue (Doc. # 25), filed on February 29, 2012. Defendant filed a response in opposition to the motion on March 26, 2012 (Doc. # 30).

After due consideration and for the reasons stated in this Order, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

## I.   Factual Background

Plaintiff Katie Selkow was hired by Defendant 7-Eleven, Inc. in October 2007, to work as a sales associate.  (Doc. #

1 at ¶ 13).  In February 2010, Plaintiff informed her then-manager, Alex Powell, that she was pregnant.  (<u>Id.</u> at ¶ 14).  On March 2, 2010, Plaintiff was transferred to another 7-Eleven store, which was a five-minute drive away from the original store.  (<u>Id.</u> at ¶ 15; Selkow Dep. Doc. # 24-2 at 18).  Plaintiff retained the same position, responsibilities, rate of pay, shifts and hours at the second store.  (Selkow Dep. Doc. # 24-2 at 18-19, 21-23).  Plaintiff understood the reason for the transfer to be that the second store needed her help, so she "gladly did it."  (<u>Id.</u> at 17, 19, 23).  Upon her transfer, Plaintiff informed her new manager, Kirsten Goodnow, that she was pregnant, to which Goodnow responded "Okay." (<u>Id.</u> at 31).

On either April 24, 2010, or May 1, 2010, Goodnow left a note for Plaintiff instructing her to "scan the beer in the cooler."  (Doc. # 1 at ¶ 17). Scanning the beer "involved moving a lot of heavy items around which Plaintiff was able to perform to the best of her abilities." (<u>Id.</u>).  However, due to Plaintiff's pregnancy, the heavy lifting began hurting Plaintiff's back, so she asked her co-worker, Aaron Goodin, to help and he did. (<u>Id.</u>).  The following day, Plaintiff told her assistant manager, Bryan Simonet, that she would need help in the future with heavy lifting and he agreed. (<u>Id.</u>; Selkow Dep.

Doc. # 24-2 at 44). Plaintiff did not discuss her problem with heavy lifting with anyone else at 7-Eleven. (Selkow Dep. Doc. # 24-2 at 45). Plaintiff did inform her doctor of the problem and her doctor "just told [her] to take it easy as far as heavy lifting goes." (Id. at 48). Between the time Plaintiff mentioned the problem to Simonet on either April 25, 2010, or May 2, 2010, and her termination on May 4, 2010, Plaintiff was never again asked to perform any heavy lifting. (Id. at 46-47).

As part of her duties as store manager, Goodnow reviewed the transactions of April 30, 2010, to determine why Plaintiff's register reflected a shortage for that day. (Goodnow Dep. Doc. # 24-4 at 16-18; McLeod Dec. Doc. # 24-16 at ¶ 4). The shortage was ultimately attributed primarily to a mistake in a lottery ticket sale. (Id. at 18). However, as part of her analysis, Goodnow reviewed the video surveillance tape for that day and believed that it showed Plaintiff taking $10 in cash from a customer and putting it in her pocket. (Id. at 29).

Goodnow conducted an investigation of the transaction, including watching the video three or four times from more than one angle, reviewing the electronic journal, "the POS worksheet shortage," the cash shortage, and the cash summary

-3-

report. (Goodnow Dep. Doc. # 24-4 at 31, 34; Goodnow Dep. 2 Doc. # 24-5 at 3). Goodnow also showed the video to Simonet and asked him to tell her what he saw. (Goodnow Dep. Doc. # 24-4 at 31). After watching the video from more than one angle, Simonet "plainly saw the money. . . did not end up in the drawer. It ended up disappearing into the pocket." (Simonet Dep. Doc. # 24-8 at 7).

Pursuant to Defendant's practice and policy, Goodnow consulted with her direct supervisor, Jacob McLeod, and showed him the video. (McLeod Dec. Doc. # 24-16 at ¶¶ 7-8; McLeod Dep. Doc. # 24-3 at 10). After reviewing the video, McLeod also believed that it showed Plaintiff stealing the money. (McLeod Dep. Doc. # 24-3 at 14). Based on this belief and his review of the electronic journal and transaction records, McLeod recommended that Plaintiff's employment be terminated in accordance with Defendant's "zero tolerance policy for employee theft." (McLeod Dec. Doc. # 24-16 at ¶¶ 8-9; McLeod Dep. Doc. # 24-3 at 10 at 10-11, 14).

Goodnow met with Plaintiff on May 4, 2010, with Simonet sitting in as a witness. (Selkow Dep. Doc. # 24-2 at 51). Goodnow showed Plaintiff the video and told her that it showed her putting the money in her pocket. (Id. at 53). Although Plaintiff denied that she had stolen the money, Goodnow

terminated Plaintiff, based on her belief that Plaintiff had stolen $10 from the store. (Id.; Goodnow Dep. Doc. # 24-4 at 15).

Plaintiff alleges that during the meeting Goodnow also claimed that Plaintiff's register was short $600 or $800 in March and that Goodnow thought Plaintiff had stolen the money "because [she] was pregnant and [her] boyfriend was out of work at the time." (Selkow Dep. Doc. # 24-2 at 49). Goodnow denies accusing Plaintiff of having a register shortage in March, and testified that the $10 theft was the only reason for Plaintiff's termination. (Goodnow Dep. Doc. # 24-4 at 27, 32). McLeod testified that he had no knowledge that Plaintiff's register was short in March, that he did not discuss Plaintiff's personal life or her boyfriend with Goodnow, and that he recommended terminating Plaintiff based only on the theft of $10. (McLeod Dep. Doc. # 24-3 at 16-17).

At no point prior to Plaintiff's termination did anyone review the video frame-by-frame or using "imaging post-processing." (Goodnow Dep. 2 Doc. # 24-5 at 8, 18). However, subsequent frame-by-frame reviews of the video reveal that the video skips or freezes for approximately four and a half seconds at the time of the alleged theft. (Id. at 8-9). Goodnow testified that she did not know how to watch the video

frame- by-frame, that it was not Defendant's practice to watch videos frame-by-frame, and that she was not aware that the capability to watch the video frame-by-frame existed. (Id. at 5, 9, 15, 18).

McLeod also affirmed that he did not watch the video frame-by-frame or using "image post-processing," that he has not been trained to watch videos frame-by-frame, that he does not expect store managers under his supervision to use frame-by-frame technology when viewing videos, and that he was not aware that frame-by-frame technology existed at the time the decision was made to terminate Plaintiff's employment. (McLeod Dec. Doc. # 24-16 at ¶ 10).

On May 18, 2010, McLeod drafted a Notice of Employee Separation which indicated the reason for Plaintiff's termination was "Violation of Division/Corporate Policy" and stated: "Witnessed employee ringing in sales, taking cash from customer, and putting cash in her pocket. When confronted, employee chose to leave interview." (Doc. # 24-15 at 2).

Plaintiff filed a Charge of Discrimination with the EEOC and the Florida Commission on Human Relations on October 1, 2010. (Doc. # 24-12). On March 3, 2011, Plaintiff filed her complaint in this Court, alleging pregnancy discrimination in violation of Title VII, as amended by the Pregnancy

Discrimination Act (Count I), pregnancy discrimination in violation of the Florida Civil Rights Act (FCRA) (Count II), disability discrimination in violation of the Americans with Disabilities Act (ADA) (Count III), and disability discrimination in violation of the FCRA (Count IV). (Doc. # 1). The parties' motions for summary judgment are now before the Court.

## II.  **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if

it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  <u>Samples ex rel. Samples v. City of Atlanta</u>, 846

F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel</u>
<u>Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856
(11th Cir. 1988)).

However, if non-movant's response consists of nothing
"more than a repetition of his conclusional allegations,"
summary judgment is not only proper, but required. <u>Morris v.</u>
<u>Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert.</u> <u>denied</u>, 456
U.S. 1010 (1982).

### III. <u>Analysis</u>

#### A. <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff's motion states that it is brought pursuant to
Federal Rule of Civil Procedure Rule 56(d)(1). (Doc. # 25 at
1). However, the current version of Rule 56(d)(1), which
provides that a Court may defer ruling on a summary judgment
motion when a non-movant demonstrates that it lacks facts
essential to justify its opposition, does not appear relevant
in this case. Instead, the Court presumes that Plaintiff's
motion is actually brought pursuant to Rule 56(g), which is
similar to the version of Rule 56(d)(1) that was in effect
prior to the 2009 amendment of the Rules.

Rule 56(g) provides:

> If the court does not grant all the relief
> requested by the motion, it may enter an order
> stating any material fact -- including an item of

> damages or other relief -- that is not genuinely in
> dispute and treating the fact as established in the
> case.

Fed.R.Civ.P. 56(g).

In her motion, Plaintiff requests the Court to enter an order establishing five facts as not genuinely at issue and striking seven of Defendant's affirmative defenses as not genuinely at issue. The Court declines to do so for the reasons that follow.

By its terms, Rule 56(g) only applies "[i]f the court does not grant all the relief requested by the motion." Thus, Rule 56(g) requires a party to first bring a Rule 56(a) motion and the Court to decline to grant it in full, before the Court may act under Rule 56(g). Here, Plaintiff has not sought summary judgment pursuant to 56(a) nor requested any other relief in the instant motion besides the establishment of certain facts and defenses as not at issue. Considering a motion brought under former Rule 56(d), this court has stated:

> Federal case law makes it clear that Rule 56(d) does not authorize the initiation of motions, like the instant motion, the sole object of which is to adjudicate issues of fact which are not dispositive of any claim or part thereof.

S.E.C. v. Wall Street Commc'ns, Inc., No. 8:09-cv-1046-T-30TGW, 2010 WL 3781646, at *1 (M.D. Fla. Sep. 23, 2010); see also Bacelli v. MFP, Inc., 729 F. Supp. 2d 1328, 1339 (M.D.

-10-

Fla. 2010)(noting that motions seeking adjudication of issues that do not resolve a party's liability on a claim are disfavored and arguably not even permitted under Rule 56). Furthermore,

> Rule 56(d)'s purpose . . . is to salvage constructive results of the Court's denial of a properly-brought but unsuccessful summary judgment motion. Rule 56(d) procedure does not stand alone, but is ancillary to a motion for summary judgment. . . . Rule 56(d) is not to be viewed as a device to obtain adjudications of non-dispositive fact issues. . . . Use of Rule 56(d) for such purposes would draft every district court into performing the task, properly the responsibility of the litigants under this Court's (and every other court's) standard form of pretrial order, of narrowing the issues for trial. Any such result would be unacceptable, because it would make *every* case on this Court's calendar fair game for such a "summary judgment" motion before the case goes to trial. Judicial calendars are far too large to permit so onerous and impermissible a use of judicial resources.

Wall Street Commc'ns, Inc., 2010 WL 3781646, at *1 (quoting SFM Corp. v. Sundstrand Corp., 102 F.R.D. 555, 558-59 (D.C. Ill. 1984))(internal citations omitted)(emphasis in original).

Given that Plaintiff has not brought a Rule 56(a) motion for summary judgment, it is not appropriate for the Court to grant the requested relief under Rule 56(g). Accordingly, Plaintiff's Dispositive Motion for Summary Judgment Establishing Certain Facts and Issues as Not Genuinely at Issue is denied.

### B. **Defendant's Motion for Summary Judgment**

#### 1. **Pregnancy Discrimination (Count I & II)**

In Count I, Plaintiff alleges a claim for pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964. In Count II, Plaintiff alleges pregnancy discrimination in violation of the Florida Civil Rights Act (FCRA). Pursuant to Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The Pregnancy Discrimination Act amended Title VII by providing that the prohibition against employment-related discrimination "on the basis of sex" includes discrimination based on pregnancy, childbirth, or related medical conditions. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312-1313 (11th Cir. 1994).

The analysis applied to pregnancy discrimination cases is the same as the analysis in other Title VII sex discrimination cases. Armstrong, 33 F.3d at 1312. Furthermore, "decisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act." Slater v. Energy Servs. Grp.

Intern. Inc., 441 F. App'x 637, 640 (11th Cir. 2011).
Accordingly, the Court's analysis below applies to both Counts
I and II.[1]

It is well settled that "there are two types of
discrimination actionable under Title VII:" disparate
treatment and disparate impact. Id. at 1313. Here, Plaintiff
alleges only a disparate treatment claim. (Doc. # 31 at 14).
A prima facie case of pregnancy discrimination in disparate
treatment cases is established when a plaintiff can show that
she "(1) was a member of a protected class, (2) was qualified
for the job she held, (3) suffered an adverse employment
action, and (4) suffered from a different application of work
or disciplinary rules." Sampath v. Immucor, Inc., 271 F.
App'x 955, 960 (11th Cir. 2008).

Plaintiff may employ one of three means to establish her

---

[1] Courts have long debated whether the FCRA provides
a cause of action for pregnancy discrimination, and Defendant
argues that it does not. See Boone v. Total Renal Labs.,
Inc., 565 F. Supp. 2d 1323 (M.D. Fla. 2008); O'Loughlin v.
Pinchback, 579 So. 2d 788 (Fla. 1st DCA 1991). While the
Florida Supreme Court has not yet spoken on the issue,
Florida's Fourth District Court of Appeal has most recently
ruled in Carsillo v. City of Lake Worth, 95 So. 2d 1118 (Fla.
4th DCA 2008), that the FCRA does allow such a claim, and
other courts have since followed Carsillo to allow such a
claim. See, e.g., Slater, 441 F. App'x at 639-640; Terry v.
Real Talent, Inc., 2009 WL 3494476 (M.D. Fla. Oct. 27, 2009).
Accordingly, the Court declines to grant summary judgment for
Count II on this ground.

prima facie case of disparate treatment employment discrimination: (1) direct evidence of discriminatory intent, (2) statistical analysis evidencing a pattern of discrimination, or (3) circumstantial evidence meeting the test established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Verbraecken v. Westinghouse Elec. Corp.</u>, 881 F.2d 1041, 1045 (11th Cir. 1989).

### a. <u>Direct Evidence</u>

Direct evidence is "evidence, which if believed, proves the existence of a fact in issue without inference or presumption." <u>Castle v. Sangamo Westin, Inc.</u>, 837 F.2d 1550, 1558 n.13 (11th Cir. 1988). An example of direct evidence in an age discrimination case, for example, would be a scrap of paper saying, "Fire Rollins—she is too old." <u>Id.</u>

The Eleventh Circuit has noted, "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1086 (11th Cir. 2004)(quotations omitted). Further, if the evidence suggests, but does not prove, discriminatory motive, it is circumstantial evidence rather than direct evidence. <u>Burrell</u>

-14-

v. Bd. of Trs., 125 F.3d 1390, 1393 (11th Cir. 1997). For
statements to qualify as direct evidence of discrimination,
such statements must come from a decision maker. Hampton v.
City of S. Miami, 186 F. App'x 967, 970 n.3 (11th Cir. 2006).
If a plaintiff comes forward with direct evidence of
discriminatory intent, an employer must prove that the same
employment decision would have been made absent any
discriminatory intent. Young v. Gen. Foods Corp., 840 F.2d
825, 828 (11th Cir. 1988).

Here, Plaintiff argues that Goodnow's alleged remark to
Plaintiff that she believed Plaintiff's register was short
$600 or $800 in March of 2010 "because Plaintiff was pregnant
and her boyfriend was out of work" constitutes direct evidence
of pregnancy discrimination. (Doc. # 31 at 5). Upon close
scrutiny of the comments and upon review of Barrett v. Capital
Acquisitions & Mgmt. Co., No. 3-62092-CIV, 2005 WL 5435098
(S.D. Fla. Jan. 26, 2005), and other discrimination cases,
this Court determines that Goodnow's alleged comments at best
can be interpreted to be circumstantial evidence rather than
direct evidence.

In the Barrett case, the plaintiff, Barrett, learned
after approximately three months of employment that she was
pregnant. Id. at *4. At the end of her pregnancy, Barrett's

doctor ordered her on bed rest. Id. She informed her employer
of the doctor's order and did not return to work. Id. at *5.
The employer testified that Barrett was out of sick leave and
vacation leave at that time and that she was not eligible for
maternity leave. Id. However, Barrett was lead to believe by
her manager that her job was open when she wanted to return.
Id. One month later, the human resources department directed
Barrett's manager to terminate her pursuant to the company's
"no call/no show policy." Id. at *6. Barrett was immediately
terminated with "voluntary job abandonment" given as the
reason on the termination report. Id. Shortly thereafter, an
unemployment agency telephoned the employer and one of
Barrett's former coworkers stated that "Barrett was terminated
because she was pregnant." Id. at *7. The employer
subsequently sent a form to the unemployment agency stating
that "Barrett had not been here a year so she did not qualify
for a leave of absence. We could not keep her position open,
so we had to discharge her due to her pregnancy." Id. at *14.

Barrett sued her former employer for pregnancy
discrimination and argued that the statements to the
unemployment agency, indicating that Barrett was fired "due to
her pregnancy," constituted direct evidence of discrimination.
Id. The district court determined that the statements were

circumstantial evidence of discrimination, rather than direct evidence, finding: "the statements require the inference that the sole reason for Barrett's discharge was her pregnancy, and not her eligibility for leave." Id. The district court determined that the statements "suggest, but do not prove" discriminatory motive. Id. at *15.

Similarly, while Goodnow was a decision maker, this Court finds that Goodnow's remark (that Plaintiff stole money because she was pregnant and her boyfriend was out of work), if indeed the remark was made, could in theory suggest, but does not prove, discriminatory motive. This is because Goodnow's remark does not necessarily mean that the sole reason for Plaintiff's termination was her pregnancy. Rather, the remark could be interpreted to merely suggest Plaintiff's motive for allegedly stealing money, not Goodnow's motive for terminating her employment. Thus, this Court finds that Goodnow's alleged statement does not constitute direct evidence of discriminatory motive, and at best may constitute circumstantial evidence. Thus, the Court will evaluate Plaintiff's case under the familiar McDonnell Douglas burden shifting test. 411 U.S. 792.

### b. Circumstantial Evidence

In analyzing allegations supported by circumstantial

evidence under Title VII, the Court follows the burden-shifting analysis established in McDonnell Douglas and its progeny. See Gamboa v. Am. Airlines, 170 F. App'x 610, 612 (11th Cir. 2006)(citing Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)). Under the McDonnell Douglas framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination against Defendant. McDonnell Douglas, 411 U.S. at 802. If Plaintiff successfully establishes a prima facie case of pregnancy discrimination, a rebuttable presumption of discrimination is created and the burden of proof then shifts to Defendant. Id. at 802-03; Dickinson v. Springhill Hosps., Inc., 187 F. App'x 937, 939 (11th Cir. 2006)(citing EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1272 (11th Cir. 2000)).

To rebut the presumption created by Plaintiff's prima facie case, Defendant must provide "legitimate, nondiscriminatory reason[s]" for the employment action taken against Plaintiff. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998). However, "[t]his is a burden of production, not persuasion." Standard, 161 F.3d at 1331. "[Defendant] must merely produce evidence that could allow a rational fact finder to conclude" its actions were not

motivated by discriminatory animus. Id.

If Defendant produces such evidence, the burden shifts back again to Plaintiff. McDonnell Douglas, 411 U.S. at 802-03. Plaintiff then "has the opportunity to come forward with evidence, including the previously produced evidence establishing her prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)(citations omitted).

c.  **Plaintiff's Prima Facie Case**

As stated above, to establish a prima facie case of pregnancy discrimination, Plaintiff must show that she "(1) was a member of a protected class, (2) was qualified for the job she held, (3) suffered an adverse employment action, and (4) suffered from a different application of work or disciplinary rules." Sampath, 271 F. App'x at 960. "[T]he burden of establishing a prima facie case is not onerous." Keene v. Prine, No. 11-13275, 2012 WL 1697836, at *4 (11th Cir. May 15, 2012)(quoting Burdine, 450 U.S. at 253).

It is not disputed that Plaintiff, as a pregnant person, was a member of a protected class. Further, Defendant does not appear to contest that Plaintiff was qualified for the job

she held.  However, there is dispute regarding whether other actions taken by Defendant besides the termination of Plaintiff's employment may constitute adverse employment actions, as well as whether Plaintiff suffered from a different application of work or disciplinary rules.

### 1)  **Adverse Employment Action**

"To prove an adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment." <u>Holland v. Gee</u>, No. 11-11659, 2012 WL 1292342, at *5 (11th Cir. Apr. 17, 2012).  Defendant does not dispute that Plaintiff's termination was an adverse employment action, and the Court agrees with that conclusion.

In the Complaint, however, Plaintiff also argues that Defendant discriminated against her "by denying her help or an accommodation for her weakened back, whereas other similarly situated non-pregnant employees were given light duty to accommodate their physical incapacity." (Doc. # 1 at ¶ 38). However, the evidence shows that Plaintiff's request for an accommodation was not actually denied, because after notifying the assistant manager of her limitation, she was never again asked to perform heavy-lifting. (Selkow Dep. Doc. # 24-2 at 46).  Furthermore, even if this allegation were true, the

Court finds it insufficient to constitute an adverse employment action because it did not amount to a serious or material change in the terms, conditions, or privileges of her employment.

Likewise, to the extent that Plaintiff contends that her transfer to another store constituted an adverse employment action, the Court finds such an argument unpersuasive.[2] By her own testimony, after Plaintiff was transferred to the second store, she retained the same position, responsibilities, rate of pay, shifts and hours. (Selkow Dep. Doc. # 24-2 at 18-19, 21-23). Furthermore, the second store was only a five-minute drive from the first. (Id. at 18). Accordingly, the Court finds that Plaintiff's transfer to the second store did not seriously or materially effect the terms, conditions, or privileges of her employment, and, as such, did not constitute an adverse employment action.

---

[2] It is not actually clear to the Court whether Plaintiff contends that her transfer was an adverse employment action. Although the transfer is mentioned in the Complaint and discussed often in the summary judgment filings, Plaintiff testified in her deposition that the reason she was transferred was because the second store needed her help and "needed more people who were physically able to do the job" and so she "gladly did it." (Selkow Dep. Doc. # 24-2 at 19, 23). Thus, it does not appear that Selkow claims Defendant had a discriminatory motive in transferring her. Nevertheless, even if Selkow intended to make such a claim, the Court finds the transfer did not constitute an adverse employment action.

As previously noted, however, Plaintiff's termination is the quintessential adverse employment action, and therefore satisfies the third prong of Plaintiff's prima facie case.

**2)** **Different Application of Work or Disciplinary Rules**

Defendant argues that Plaintiff has not satisfied the fourth prong because she has failed to offer examples of employees who were similarly situated but who were disciplined in different ways than Plaintiff. Defendant argues that it "maintains a zero tolerance policy with regard to employee theft and all employees determined to have committed theft are terminated." (Doc. # 24 at 13). According to Goodnow, she has terminated four other people for stealing, yet none of those employees were pregnant. (Goodnow Dep. Doc. # 24-4 at 4-5).

However, Plaintiff presents evidence showing that another employee, Ryan Coffrin, was caught playing scratch-off lottery tickets at work prior to paying for them, but was not subsequently terminated by Defendant. (Coffrin Dep. Doc. # 31-8 at 6-8). Defendant contends that Coffrin's actions did not constitute stealing because he subsequently paid for the lottery tickets with the winnings from the tickets. (Doc. # 24 at 14). Defendant argues that based on this distinction as

well as the fact that Coffrin "worked in a different store, during a different time period, and under a different supervisor," Coffrin is not a similarly-situated employee or valid "comparator" to Plaintiff. (Id. at 19).

"When determining whether employees are similarly situated for the purposes of establishing a prima facie case of discrimination, we must consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Castillo v. Roche Labs., Inc., No. 11-12219, 2012 WL 1648873, at *2 (11th Cir. May 11, 2012). "To prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges, the quantity and quality of the comparator's misconduct must be nearly identical." Id.

While the Court is mindful of the distinctions noted between Plaintiff's circumstances and Coffrin's, at this stage of the proceedings, this Court must draw all reasonable inferences in Plaintiff's favor. Shotz, 344 F.3d at 1164. Thus, the Court finds that Plaintiff has presented evidence from which a reasonable jury could conclude that Coffrin's actions constituted or were similar to stealing given that he did not pay for the lottery tickets prior to playing them. Further, a reasonable jury could also conclude that

Defendant's disciplinary policies should be applied uniformly to employees regardless of which store they work in or who the employees' immediate supervisor is. At a minimum, there are genuine issues of material fact as to whether Plaintiff was treated differently than similarly situated employees outside of her protected class. With this standard in mind, this Court finds that Plaintiff has presented a prima facie case of pregnancy discrimination.

> **d.    Defendant's Legitimate Nondiscriminatory Reasons for Termination and Plaintiff's Pretext Arguments**

Despite finding that Plaintiff can establish her prima facie case, the Court grants summary judgment in favor of Defendant on Plaintiff's pregnancy discrimination claim because Defendant has come forward with a legitimate and non-discriminatory reason for terminating Plaintiff, which Plaintiff has not rebutted.

The Defendant's burden of rebuttal is "exceedingly light," and the Defendant "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." Weston-Brown v. Bank of Am. Corp., 167 F. App'x 76, 80 (11th Cir. 2006) (internal citations omitted). The Defendant's burden "serves simultaneously to meet the plaintiff's prima facie case by

presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Burdine, 450 U.S. at 255-56. "The reason offered by an employer for an action does not have to be a reason that the judge or jurors would act on or approve. Instead, all that matters is that the employer advance an explanation for its action that is not discriminatory in nature." Schoenfeld v. Babbitt, 168 F.3d 1257, 1269 (11th Cir. 1999) (internal citation and quotations omitted).

The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason the employer provides is a mere pretext for the prohibited, discriminatory conduct. Id. A plaintiff may meet this burden by "demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). However, "[a] reason cannot . . . be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Blue v. Dunn Constr. Co., 453 F. App'x 881, 884 (11th Cir.

-25-

2011)(citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993)).

As outlined in detail above, Defendant terminated Plaintiff based on Goodnow's and McLeod's belief that Plaintiff had stolen money. According to Goodnow, while reviewing a video surveillance tape to determine why Plaintiff's register had a shortage on April 30, 2010, she saw Plaintiff ring up a customer, put her finger on the cash register drawer so it did not open all the way, and put the money in her pocket instead of in the cash register. (Goodnow Dep. 2 Doc. #24-5 at 3, 6). Goodnow then conducted an investigation of the transaction, including watching the video three or four times from more than one angle, reviewing the electronic journal and cash shortage, and having another person, Simonet, review the video as well. (Goodnow Dep. Doc. # 24-4 at 31, 34; Goodnow Dep. 2 Doc. # 24-5 at 3). After watching the video from more than one angle, Simonet "plainly saw the money. . . did not end up in the drawer. It ended up disappearing into the pocket." (Simonet Dep. Doc. # 24-8 at 7). McLeod, Goodnow's supervisor, also viewed the video and believed that it showed Plaintiff stealing the money. (McLeod Dep. Doc. # 24-3 at 14). Based on this conclusion, McLeod recommended that Plaintiff's employment be terminated. (<u>Id.</u> at

10-11).

As stated by the court in <u>Alexander v. Fulton Cty., Ga.</u>, 207 F.3d 1303 (11th Cir. 2000), "it is not the court's role to second-guess the wisdom of an employer's decision." <u>Id.</u> at 1341. "We do not analyze 'whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.'" <u>Blue</u>, 453 F. App'x at 886 (citing <u>Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999)).

Plaintiff has offered only conclusory allegations of pretext in an attempt to rebut Defendants' non-discriminatory reason for terminating her. Plaintiff argues that the actual reason she was terminated is because she requested assistance from Simonet with future heavy lifting due to her pregnancy. (Doc. # 31 at 15). Plaintiff claims that because she was terminated by Goodnow on the next shift after she requested assistance, this shows that Defendant was "motivated by its view that a pregnant employee . . . could not perform part of the job even though it admitted that lifting heavy items was not an essential part of the job." (<u>Id.</u> at 15).

However, Plaintiff has failed to present, and the Court has not found, any evidence linking Plaintiff's request for

help with her termination. Specifically, Plaintiff has not provided any evidence indicating that Goodnow and/or McLeod knew that Plaintiff had made this request at the time they made the decision to terminate her. Plaintiff admits that she did not speak to Goodnow or McLeod about her difficulty lifting heavy items or her request for an accommodation, nor did she contact Human Resources to request an accommodation. (Selkow Dep. Doc. # 24-2 at 44-45, 48, 61). Goodnow testified that she was not aware that Plaintiff had advised Simonet that she needed help with heavy lifting. (Goodnow Dep. Doc. # 31-3 at 3-4). Goodnow further testified that she would not have had a problem with Plaintiff receiving help with lifting and that it would not have created an undue hardship. (Id.). McLeod testified that the only reason for Plaintiff's termination was theft and that he was not even aware of the specific instance in which Plaintiff was asked to scan beer. (McLeod Dep. Doc. # 24-3 at 11, 18). Furthermore, even though Simonet knew of the request, he did not have the authority to fire employees, did not make the decision to terminate Plaintiff and did not make any recommendation to Goodnow regarding whether Plaintiff should be fired. (Id. at 9; Simonet Dep. Doc. # 24-8 at 4).

    To survive summary judgment, Plaintiff must create a

genuine issue of material fact both as to whether Defendant's reason is false and as to whether discrimination was the real reason. St. Mary's Honor Ctr., 509 U.S. at 515. Plaintiff has not done so. Plaintiff has provided no evidence suggesting that Defendant terminated Plaintiff because she could no longer perform heavy lifting or because she asked Simonet for help in doing so. Plaintiff has not supplied any evidence to refute the testimony of Goodnow, McLeod, and Simonet or that would "allow a factfinder to disbelieve [Defendant's] proffered explanation for its actions." Combs, 106 F.3d at 1532. Accordingly, based on this unrefuted testimony, Plaintiff has failed to provide sufficient evidence from which a jury could conclude that Defendant's legitimate non-discriminatory reason for Plaintiff's termination was merely pretext for discrimination.

Plaintiff also argues that Defendant's proffered legitimate reason for the termination was merely pretext because Defendant failed to conduct an adequate and good faith investigation of the surveillance video prior to terminating Plaintiff. Specifically, Plaintiff asserts that the video has notable deficiencies, including a four-second lapse during the point in which Plaintiff is believed to be putting the money in her pocket. Despite Goodnow's testimony that she did not

know that reviewing the video frame-by-frame was even possible and that it was not Defendant's practice or policy to review videos in such a way, Plaintiff argues that based on Goodnow's experience in reviewing surveillance videos, Goodnow should have noticed the lapse in the video and should have then utilized a frame-by-frame review of the video to determine that the video does not clearly show Plaintiff putting money in her pocket.

Plaintiff dedicates much of her argument to a detailed explanation of all the steps Plaintiff believes Goodnow should have taken upon reviewing the video and explains what Goodnow should have seen and heard had she taken the steps Plaintiff prescribes.  Plaintiff asserts that because Goodnow failed to perform the steps Plaintiff believes are necessary prior to terminating Plaintiff, Defendant's investigation was not done in good faith and, thus, was merely pretext for discrimination.

The Court finds Plaintiff's argument unpersuasive. Plaintiff's arguments to the contrary, the law does not require Defendant to go to all possible lengths to rule out misconduct prior to terminating an employee for such conduct; rather, Defendant must only have taken sufficient efforts to form an honest belief that Plaintiff engaged in the conduct.

A termination based on a good faith belief of misconduct is legitimate, even if it is later determined that no misconduct occurred. EEOC v. Total Sys. Serv., 221 F.3d 1171, 1176-77 (11th Cir. 2000)("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.").

Furthermore, it is not the Court's place to dictate the extent to which a Defendant must investigate misconduct prior to disciplining an employee because "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [Title VII] does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation for its behavior." Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)(citations omitted). "For an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory." Id. (citations omitted).

The evidence shows that upon her initial viewing of the

video, Goodnow launched an investigation of the transaction, including watching the video three or four more times from more than one angle and reviewing cash shortage and other records which corroborated her belief that Plaintiff had stolen money from the store.  Goodnow also then showed the video to two other people, Simonet and McLeod, who both concluded that it showed Plaintiff stealing money.  In their testimony, both Goodnow and McLeod steadfastly maintained that they believed the video showed Plaintiff stealing money from the store and that the theft was the only reason for her termination.  Furthermore, Plaintiff conceded in her own testimony that she understood how Goodnow in watching the video would have thought that she, Plaintiff, had put the money in her pocket.  (Selkow Dep. Doc. # 24-2 at 56).

From this evidence, a reasonable jury could certainly conclude that Defendant engaged in an adequate investigation of the transaction and that Defendant's decision to terminate Plaintiff was based on a good faith belief that Plaintiff had actually stolen the money.  Plaintiff's proffered evidence that there were further steps Defendant could have taken in reviewing the video prior to terminating Plaintiff is insufficient to create a jury question on this issue.

Plaintiff has failed to come forward with evidence to

refute Defendant's legitimate and non-discriminatory business decision to terminate Plaintiff based on Goodnow's and McLeod's good faith belief, based on reviews of the surveillance video and other corroborating transaction reports, that she had stolen money. As in <u>Blue</u>, Plaintiff has not come forward with evidence of "unlawful animus," and this Court grants summary judgment on Plaintiff's pregnancy discrimination claims.

### 2. <u>Disability Discrimination (Counts III & IV)</u>

In Count III, Plaintiff alleges that she was discriminated against on the basis of an alleged disability -- her pregnancy -- in violation of the Americans with Disabilities Act, 42 U.S.C. § 12102, <u>et seq.</u> Similarly, in Count IV, Plaintiff alleges a claim for disability discrimination under the FCRA. "Claims brought under . . . the FCRA are analyzed under the same framework as the ADA, and, thus, need not be addressed separately. <u>Knowles v. Sheriff</u>, 460 F. App'x 833, 833 (11th Cir. 2012). Accordingly, the Court's analysis of Plaintiff's ADA claim also disposes of Plaintiff's FCRA disability claim.

To survive summary judgment, Plaintiff must establish a prima facie case of discrimination by showing that (1) she has a disability, (2) she is a qualified individual (meaning she

could perform the essential functions of the job in question with or without reasonable accommodations), and (3) Defendant unlawfully discriminated against her because of her disability. Knowles, 460 F. App'x at 833 (citing Rossbach v. City of Miami, 371 F.3d 1354, 1356-57 (11th Cir. 2004)). An individual is disabled under the ADA if she has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff claims that she was disabled as defined in both Subsections (A) and (C) of Section 12102. (Doc. # 1 at ¶ 50).

### a. Disability under Subsection (A)

In its motion, Defendant argues that it is entitled to summary judgment on Counts III and IV because pregnancy is not considered a disability under the ADA or FCRA. (Doc. # 24 at 22-23). In response, Plaintiff argues, without citing any authority in support, that pregnancy is considered a temporary disability and should be afforded the same protections under the ADA and FCRA as a permanent disability. (Doc. # 31 at 20).

Absent unusual circumstances, pregnancy is not considered a disability -- temporary or otherwise -- under the ADA or

FCRA.  See Walsh v. Food Supply, Inc., No. 96-677-CIV-ORL-18, 1997 WL 401594 (M.D. Fla. Mar. 19, 1997) ("[P]regnancy is not a 'handicap' within the meaning of . . . the FCRA for the same reasons it is not a disability under the ADA."); Farrell v. Time Serv., Inc., 178 F. Supp. 2d 1295, 1298 (N.D. Ga. 2001)("It is clearly established that pregnancy *per se* does not constitute a disability under federal law."); Wenzlaff v. NationsBank, 940 F. Supp. 889, 890 (D. Md. 1996)("With near unanimity, federal courts have held that pregnancy is not a 'disability' under the ADA.").

However, as discussed in Jeudy v. Holder, No. 10-22873-CIV, 2011 WL 5361076, *1 (S.D. Fla. Nov. 7, 2011), some courts have recognized that pregnancy may rise to the level of a disability if the plaintiff experiences severe complications which amount to an impairment that substantially limits one or more major life activities.  See also, Farrell, 178 F. Supp. 2d at 1299 ("At most, courts have held that pregnancy may rise to the level of a disability if there are severe complications.").

In Jeudy, the court considered whether a plaintiff's pregnancy complications, specifically pelvic pain from the presence of fibroids in her uterus that allegedly impaired her ability to walk or stand, constituted a disability under the

ADA. 2011 WL 5361076 at *4. In granting summary judgment for the defendant, the court held that such an impairment "was not of the nature, severity, or duration necessary to be substantially limiting" because the pain was not constant or ongoing but, rather, occurred off and on throughout the day. Id. at *5. The court further concluded that the plaintiff's doctor's note, which recommended only that the plaintiff should not repetitively climb stairs, merely established that the plaintiff "suffered from a diminished activity tolerance with respect to her ability to walk" which was not enough to create a factual issue for the jury. Id.

Here, Plaintiff does not claim or present any evidence of severe complications that arose during her pregnancy. Rather, Plaintiff claims only that due to her pregnancy, she experienced a weakened back, which prevented her from performing heavy lifting at work. (Doc. # 1 at ¶¶ 50-52). Plaintiff testified that she did not have "a problem lifting anything until that point with the beer" and that she "had been okay doing [her] job, had no problem with it until that point when [she] ran into a problem lifting the beer." (Id. at 45). Upon reporting the condition, Plaintiff's doctor told her only to "take it easy as far as heavy lifting goes." (Id. at 48). Plaintiff testified that she took her doctor's advice

and that "[i]t didn't bother me as long as I . . . was cautious on my lifting." (Id. at 48-49). Plaintiff has not supplied any further evidence regarding the nature, severity, or duration of her alleged disability.

As in Jeudy, the proffered evidence at most establishes that Plaintiff suffered from a diminished tolerance with respect to her ability to lift. By Plaintiff's own testimony, she was directed only to "take it easy" regarding lifting and was fine as long as she "was cautious" regarding the amount she lifted. Thus, while Plaintiff's pregnancy-related back pains may have affected to some degree her ability to lift, she has not produced sufficient evidence from which a jury could reasonably conclude that she was substantially limited in performing a major life activity. See also Hillburn v. Marata Elecs. N. Am., 181 F.3d 1220, 1227-28 (11th Cir. 1999) (holding that a diminished activity tolerance for normal daily activities such as lifting, running and performing manual tasks, as well as a lifting restriction, did not constitute a disability under the ADA). Accordingly, Plaintiff has failed to raise a genuine issue of material fact as to whether her pregnancy and its attendant impairment of a weakened back amount to a disability and her claims under the ADA and FCRA fail as a matter of law.

## b.  <u>Disability under Subsection C</u>

Plaintiff also claims that she was disabled as defined by 42 U.S.C. § 12102(1)(C) because she "was regarded by Defendant as having a physical impairment." (Doc. # 1 at ¶ 50). However, as Defendant correctly notes, pursuant to the ADA's express terms, "Paragraph (1)(C) shall not apply to impairments that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

According to her testimony, Plaintiff's impairment was caused solely by her pregnancy and manifested when she was five months pregnant.  (Selkow Dep. Doc. # 24-2 at 37, 43). Given that Plaintiff's pregnancy could not possibly last another six months from the time the impairment began, the Court concludes that Plaintiff's impairment was "transitory" as defined by the ADA, and as such, she did not have a "disability" under 42 U.S.C. § 12102(1)(C) as a matter of law. Accordingly, Defendant is entitled to summary judgment on Counts III and IV for disability discrimination.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiff Katie M. Selkow's Dispositive Motion for Summary Judgment Establishing Certain Facts and Issues as

Not Genuinely at Issue (Doc. # 25) is **DENIED.**

(2) Defendant 7-Eleven, Inc.'s Motion for Summary Judgment (Doc. # 24) is **GRANTED.**

(3) The pretrial conference scheduled for June 14, 2012, and trial scheduled for the July 2012 term are hereby cancelled.

(4) The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff and to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>7th</u> day of June, 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record